UNITED STATES of America,
Plaintiff-Appellee,

v.

Amador GARCIA, Jr.,
Defendant-Appellant.

Nos. 75–4469, 75–4487.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1977.

---

Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., William W. Burge, Gustavo L. Acevedo, Asst. Fed. Public Defenders, Laredo, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Joe Garza, Asst. U. S. Atty., Laredo, Tex., for plaintiff-appellee.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES, District Judge.*

CLARK, Circuit Judge:

Defendant Amador Garcia, Jr. was convicted on December 19, 1975 of conspiracy to possess heroin with the intent to distribute,[1] possession of heroin with intent to distribute, distribution of heroin,[2] and assaulting a federal officer.[3] The defendant's sole contention is that the evidence presented raised the issue of entrapment. The trial court refused to instruct the jury on this defense. We agree that the evidence did not raise the issue and affirm.

The evidence presented by the government indicated that on July 29, 1975, the

---

* Senior District Judge for the Northern District of Texas, sitting by designation.

1. 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 2.

2. 21 U.S.C. § 841(a)(1).

3. 18 U.S.C. § 111.

Subsequently the district court revoked Garcia's probation which had been entered in 1972 following a conviction for transporting an alien within the United States. 8 U.S.C. § 1324(a)(2). Since the basis for the revocation was Garcia's conviction in December 1975, the appeals in these two causes were consolidated.

defendant was introduced to a purported buyer of heroin who was in fact an undercover federal Drug Enforcement Administration (DEA) agent, Mario Alvarez. The introduction was made in Zapata, Texas by Fernando (Bobby) Villareal, who was Garcia's cousin and had agreed to assist the government. Soon after the contact was made, Bobby Villareal left Garcia and Alvarez and was no longer involved in the transactions. After buying approximately an ounce of heroin at this time, Alvarez met Garcia on August 7 to buy another ounce. Alvarez was shown the supposed drug, ascertained secretly with other agents that the substance was heroin, and then made the arrest after a brief scuffle.

Garcia testified in his own defense that Bobby Villareal's brother, Bernardo, pressured him for six or eight weeks to make the sale to Alvarez. Bernardo supposedly indicated that Alvarez was a friend he had made while the two were incarcerated in a Brownsville, Texas jail. After repeated refusals to sell, Garcia states he succumbed to Bernardo Villareal's entreaties and agreed to the transaction. Bernardo testified that he could not remember his involvement in the transaction, though the events occurred merely five months before the November, 1975 trial.

■ Even if the evidence is unsubstantial that entrapment has occurred, *United States v. Young*, 464 F.2d 160, 164 (5th Cir. 1972); *Pierce v. United States*, 414 F.2d 163, 168 (5th Cir. 1969), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), and even if it is the defendant's testimony alone which raises the issue, *Strauss v. United States*, 376 F.2d 416, 419 (5th Cir. 1967), *any* evidence that "the Government's deception actually implant[ed] the criminal design in the mind of the defendant," requires a charge to the jury on the defense of entrapment. *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366, 376 (1973).

■ As was articulated in *Russell* and reiterated in *Hampton v. United States*, 425 U.S. 484, 488, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976), the entrapment defense centers upon the predisposition of a defendant to commit a crime rather than upon the activities of the government and its agents. Yet both factors are necessary to determine whether the defense has been presented by the evidence. Entrapment cannot result from the inducements of a private citizen but must be the product of conduct by governmental agents. *Pearson v. United States*, 378 F.2d 555, 561 (5th Cir. 1967). "The conduct with which the defense of entrapment is concerned is the manufacturing of crime by law enforcement officials and their agents." *Lopez v. United States*, 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963) (emphasis omitted). "[I]f the initiator of the criminal activity is not a government agent the defense of entrapment does not apply." *United States v. Romano*, 278 F.2d 202, 204 (2d Cir. 1960), *quoted with approval in United States v. Comi*, 336 F.2d 856, 860 (4th Cir. 1964), *cert. denied*, 379 U.S. 992, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965).

■ Garcia's entrapment contention is based upon the activities of Bernardo Villareal and not those of the admitted cooperating individual, Bobby Villareal. The issue really turns on whether Bernardo was shown to have been acting as a government agent. The only evidence Garcia can point to in the record which even intimates a connection between Bernardo and the government is the testimony of a DEA agent named John Lunt who described a meeting between various federal drug enforcement officials and the two Villareal brothers. This meeting did not occur until one week before Alvarez's first purchase of heroin from Garcia. Lunt testified that much of the meeting consisted of questioning the Villareals on narcotic operations in the surrounding area of Texas. Garcia particularly points to Lunt's words: "We told them exactly how we would like to work *with them* and how *they could help us* in our investigation." Any possibility presented by this general language that the government desired assistance from both Villareals is eliminated by Lunt's subsequent statements that Bernardo was told he would not be used in the operation since he

was on parole.[4] It is of significance also that though Garcia argues Bernardo should be deemed a government agent, the only evidence offered to support the position is a meeting which occurred after five of the six weeks of supposed entreaties by Bernardo had passed.

Regardless of whether Bernardo Villareal actually did pressure Garcia to sell to the government agent, Alvarez, there is no indication that Bernardo ever entered into an explicit or implied agreement to assist the government to make a case against Garcia. Further, there is nothing in the record beyond rank speculation to indicate that the government was ever aware of Bernardo's purported efforts and deliberately failed to restrain him. There is simply no evidence that raises the defense of entrapment. The district court committed no error in refusing to submit the issue to the jury.

The judgment is

AFFIRMED.

---

4.  [In response to a question of whether a reward was offered to either brother:] I believe the specific information was with Bobby Villareal because we were not going to be able to use Bernardo Villareal.

 [Answering why Bernardo could not be utilized in the operation:] He's on federal parole I believe. It's not our—our policy to use individuals on federal parole.

No sir, we were not going to use Bernardo Villareal as an informant. We told them that we would have to use his brother, Bobby.