**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anibal SARMIENTO, a/k/a Pedro,
Defendant-Appellant.**

Nos. 85–1132, 85–1137.

United States Court of Appeals,
Fifth Circuit.

April 4, 1986.

S. Michael McColloch, David W. Coody, Dallas, Tex., for defendant-appellant.

Robert R. Smith, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, HILL and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

This is an appeal from two convictions for violation of federal drug laws. The first is a jury conviction for conspiracy to possess with intent to distribute and to distribute cocaine and for using a telephone to facilitate distribution of cocaine. 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1), 843(b), 846. The second is the result of a plea of guilty to the charge of using a communication facility in a conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 843(b). Appellant asserts that the court erred in failing to instruct the jury on the entrapment defense to the first charge, and that it erroneously approved his guilty plea, misapplying Fed.R.Crim.P. 11(a)(2), with respect to the second conviction. Finding no error we AFFIRM both convictions.

Special governmental agents negotiated with Appellant, Anibal Sarmiento, and co-defendants Shapiro and Calva for the purchase of cocaine. The transaction unfolded when a government informant introduced Shapiro to DEA agent Chester on February 13, 1984, and Chester expressed an interest in buying cocaine. The next day, Shapiro talked with Chester and proposed a sale of ten kilos. During the following week several phone calls were made and recorded concerning the sale. On February 23, Shapiro and Calva met over lunch with Chester and FBI agent Steging at a restaurant in Dallas. According to FBI agents watching the scene, Sarmiento was present at another table, and he did not meet either Chester or Steging. At a nightclub that evening, however, according to the agents' testimony, Sarmiento was introduced to them as the "manufacturer's representative." Sarmiento told them that from now on they would be dealing directly with him, explained the professionalism of his company, and said he wished to have long-term customers by keeping the percentage of cocaine high.

On February 27, Shapiro notified Chester that the cocaine had arrived, but Chester did not yet have the money available. Later that evening Shapiro again spoke with Chester informing him that the cocaine had been tampered with. Over the next three days, the parties renegotiated the sale. Four of their telephone conversations were between Sarmiento and Steging, and three

of those were tape recorded. When the agents told Shapiro and Calva that "their organization" was unhappy that the deal was not going smoothly, Sarmiento offered to procure a small amount of cocaine for Steging, and on March 2, Shapiro delivered 2.5 grams of cocaine to Chester and Steging. Steging testified that Sarmiento effectuated the delivery. These facts outline the prosecution evidence which concluded with a jury verdict of guilty.

The second indictment, to which Sarmiento pleaded guilty, was the result of telephone calls between Sarmiento and special agent Garcia in Puerto Rico revealing a conspiracy to possess with intent to distribute 3.55 grams of cocaine. This indictment, returned in Puerto Rico, was transferred to the Northern District of Texas where the former indictment originated.

▆▆▆ With respect to both convictions, Sarmiento attempts to raise the defense of governmental entrapment. This court has recently determined en banc when a defendant is entitled to a jury instruction on a possible defense of entrapment. *United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (en banc),

> In order for a defendant to be entitled to entrapment instructions and to have the jury decide his entrapment defense, the record must contain evidence from which the jury could find (1) governmental inducement that might cause one to act criminally where he otherwise would not and (2) the accused's lack of intent, before contact by governmental agents, to commit the crime charged.

*Id.* at 207. A defendant who wishes to assert an entrapment defense must come forward with evidence "that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." *United States v. Webster*, 649 F.2d 346, 349 (5th Cir.1981) (en banc). If the defendant clears this hurdle, then the burden shifts to the Government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.*

▆▆ Having carefully reviewed the trial court record, we do not find any evidence that supports the defendant's initial burden. *See United States v. Stanley*, 765 F.2d 1224 (5th Cir.1985).

Sarmiento offers as evidence of inducement that the government agents initiated the transaction offering large sums of money and curried sympathy by suggesting they might be harmed by their fictitious boss "Big Jim" if Sarmiento did not deliver. Further, the telephone tapes allegedly reveal some reluctance by Sarmiento to complete the deal. The latter two factors came into play only after Sarmiento had agreed to sell cocaine to the agents. The former is overborne by the fact that the government agents did not even know that Sarmiento existed prior to being introduced to him by his co-defendants. They had been led to expect that another man was the supplier of the co-defendants. This was a first time offense by the defendant and the government had no evidence that he had ever been involved in cocaine dealings. Nevertheless, the government agents' active negotiations merely entailed consummating a sale of illegal drugs that was clearly contemplated by Sarmiento and the agents at their initial meeting.

▆▆ Sarmiento next argues that even if government agents did not directly induce him to commit the offense, they did so through his co-defendants as knowing or unknowing intermediaries. He concedes that in this circuit, entrapment "cannot result from the inducements of a private citizen but must be the product of conduct by governmental agents." *United States v. Garcia*, 546 F.2d 613, 614 (5th Cir.), *cert. denied*, 430 U.S. 958, 97 S.Ct. 1608, 51 L.Ed.2d 810 (1977). He suggests nevertheless that *Garcia* holds that for entrapment purposes, the government may act through a private middleman if it was aware of the middleman's efforts and deliberately failed to curtail them. *Id.* at 615. We do not find the *Garcia* statement, taken in context, to have the meaning Sarmiento ascribes to it. In *Garcia*, Fernando Villareal volunteered to assist the government in introducing the

defendant to an undercover agent posing as a drug dealer. Garcia asserted, however, that the improper third-party inducements were made, not by Fernando, but by Fernando's brother Bernardo Villareal, who had allegedly pressured Garcia for several weeks to sell drugs to the undercover agent. The court stated that "the issue really turns on whether Bernardo was shown to have been acting as a government agent." *Garcia* at 615. It concluded that there was neither evidence of any express or implied agreement between Bernardo and the government nor any evidence beyond rank speculation that the government might have been aware of Bernardo's efforts and failed to restrain him. Because of the direct connection between Bernardo and his brother who was knowingly helping the government, and because the court posed the issue as whether Bernardo was acting as a government agent, *Garcia* does not support the theory that a middleman's communication of inducements to the defendant, *absent* an agreement with the government, permits an entrapment defense to be raised. Such an extension of *Garcia* would lead to the untenable rule that codefendants' communications among each other concerning the government agents' undercover scheme automatically raises the possibility of entrapment. This circuit has not adopted the "unsuspecting middleman" theory of entrapment, through *Garcia* or otherwise. *See United States v. Valencia*, 645 F.2d 1158 (2nd Cir.1980), reh. denied 669 F.2d 37 (1981) *cf. United States v. Ambrose*, 707 F.2d 1209, 1212–1213 (11th Cir.1983), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366.

The "middleman" hypothesis also fails because the only evidence of inducements to crime has been discussed above and found insufficient to create a jury issue on the entrapment defense. The existence of alleged intermediaries does not enhance the probity of that evidence or the inferences that might be drawn from it.

With respect to the second conviction, Sarmiento requests that he be allowed to withdraw his guilty plea and proceed to trial, because the trial court improperly accepted a Fed.R.Crim.P. 11(a)(2) guilty plea conditional on the outcome of appeal of the entrapment defense. The Rule allows a defendant to "enter a conditional guilty plea or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of an adverse determination of any specified pretrial motion." Fed.R.Crim.P. 11(a)(2). If the defendant prevails on appeal, he may withdraw his plea. *Id.* The court and the government must consent to a conditional plea. *Id.* Why the government consented in this case is unclear. The trial judge allowed the conditional plea, although he also emphasized that he did not think entrapment, a substantive defense, could be raised as a pretrial matter.

 Sarmiento concedes on appeal that entrapment is not a proper subject for a conditional plea, because a plea of guilty waives all nonjurisdictional defenses except pretrial matters covered by Rule 11(a)(2). Entrapment, a defense on the merits, was waived by the guilty plea. *United States v. Yater*, 756 F.2d 1058 (5th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). Consequently, adherence to Rule 11(a)(2) precludes Sarmiento from withdrawing his guilty plea. Sarmiento, argues that because the court permitted him to follow an erroneous strategy, he should be allowed to withdraw his plea. That result would give Appellant the benefit of Rule 11(a)(2) when he has not met its requirements, and would reward Sarmiento for bringing about a procedural error. We decline to countenance such a result. His alternate contention that because the court granted the conditional plea, his guilty plea was not voluntary is not persuasive given the court's insistent warning that entrapment was not a Rule 11(a)(2) pretrial matter.

For the foregoing reasons, the two convictions are AFFIRMED.