UNITED STATES of America

v.

Sherwood ABBOTT, a/k/a "Jusef Abbott"

Criminal Action No. 94–00010.

United States District Court,
E.D. Pennsylvania.

March 4, 1997.

**704**

Sherwood Abbott, Butner, NC, pro se.

Christopher Hall, Asst. U.S. Atty., Philadelphia, PA, for U.S.

### MEMORANDUM

DuBOIS, District Judge.

This matter is before the Court on the *pro se* Motion of defendant, Sherwood Abbott, Jr., to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255. Defendant argues that the Court made legal errors in determining his sentence, that his counsel at sentencing was ineffective, and that his sentence was therefore imposed in violation of his Sixth Amendment rights. For the reasons set forth below, defendant's Motion will be denied.

## I. BACKGROUND

Sherwood Abbott, Jr. ("defendant") pled guilty to two counts of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). He was sentenced on July 12, 1994. At sentencing, the Government presented evidence that defendant sold an assault rifle and a semi-automatic pistol with a vented barrel to a witness who was cooperating with the Government. Tape recorded conversations between defendant and the cooperating witness received in evidence at sentencing disclosed that the witness told defendant that the ultimate purchasers of the weapons were "Young Boys" who trafficked in "cooked 'caine.' "

Defendant's sentence was calculated as follows:

The United States Sentencing Guideline for a violation of 18 U.S.C. § 924(a) is § 2K2.1(a)(4)(A). The base offense level under that section is twenty (20). The Court then increased the base offense level by four (4) levels under United States Sentencing Guidelines ("USSG") § 2K2.1(b)(5) in view of the evidence that the guns were possessed with the intent that they be used in connection with a felony, in this case, drug trafficking.

The Government also argued at sentencing that defendant should be given a two (2) level upward adjustment for obstruction of justice under USSG § 3C1.1. Such a finding by the Court ordinarily precludes a three (3) level reduction for acceptance of responsibility pursuant to USSG § 3E1.1. However, as a result of the efforts of defense counsel, the Government abandoned its position that defendant obstructed justice and agreed that he was entitled to a three (3) level reduction for acceptance of responsibility under USSG §§ 3E1.1(a) and (b). Sentencing Transcript, at 50, 77, 85, 86.

Defendant's total offense level was twenty-one (21). *Id.* at 134. He was in Criminal History Category III. With a total offense level of twenty-one (21), in Criminal History Category III, defendant's Guideline Sentencing Range was forty-six (46) to fifty-seven (57) months. *Id.* The Court sentenced defen-

dant to fifty-three (53) months on both counts of the Indictment, such terms to run concurrently. *Id.* at 157.

## II. DISCUSSION

### A. Defendant's Allegations

Defendant alleges that the Court made four legal errors at his sentencing hearing, resulting in an improperly calculated sentence. Moreover, he alleges that his sentencing counsel was ineffective.

First, defendant alleges the Court should not have admitted Agent Tropea's testimony at sentencing on the ground that that testimony violated the Federal Rules of Evidence, and that counsel was ineffective in not objecting to the admission of that testimony. Second, defendant argues that the Court should have accounted for the claimed over-representation of his criminal history in calculating his sentence, and that counsel was ineffective in failing to move for a downward departure on that basis. Third, defendant argues that the Court should have accounted for his allegedly extraordinary family circumstances in calculating his sentence, and that counsel was ineffective in failing to move for a downward departure on that basis. Fourth, and finally, defendant alleges that his offense level was improperly enhanced pursuant to USSG § 2K2.1(b)(5) because the government engaged in sentencing entrapment to increase his sentence, and that counsel was ineffective in failing to raise this issue. Defendant has the burden of proof on all such issues. *United States, ex rel. Freddie M. Johnson v. Johnson,* 531 F.2d 169, 174 (3d Cir.1976).

### B. Procedural Issues

Defendant is barred from collaterally attacking his sentence pursuant to 28 U.S.C. § 2255 so far as that attack is based upon issues that could have been, but were not, raised on direct appeal. *See United States v. Frady,* 456 U.S. 152, 162–63, 102 S.Ct. 1584, 1591–92, 71 L.Ed.2d 816 (1982); *United States v. Essig,* 10 F.3d 968, 979 (3d Cir. 1993). Defendant could have, but did not, raise the following three claims on direct appeal: 1) that his sentence was improperly

calculated due to the improper admission of evidence in violation of the Federal Rules of Evidence, 2) that his sentence should have taken into account the alleged over-representation of his criminal history by his placement in Criminal History Category III, and 3) that his sentence should have taken into account his allegedly extraordinary family circumstances. Therefore, those three claims are procedurally barred. To avoid the bar, defendant must prove "both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady,* 456 U.S. at 168, 102 S.Ct. at 1594.

To satisfy his burden of showing cause that excuses his failure to raise these issues on appeal, defendant argues that counsel was ineffective with respect to the three issues in question. This argument requires that the Court analyze the three underlying claims and the issue of whether counsel was ineffective.

■ Defendant's sentencing entrapment claim was raised on appeal. "Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" *United States v. DeRewal,* 10 F.3d 100, 105 n. 4 (3d Cir.1993) (quoting *Barton v. United States,* 791 F.2d 265, 267 (2d Cir.1986)). The Third Circuit has, however, identified four exceptions to that rule: 1) "newly discovered evidence that could not have reasonably have been presented at the original trial," 2) "a change in applicable law," 3) "incompetent prior representation by counsel," 4) "or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims." *United States v. Palumbo,* 608 F.2d 529, 533 (3d Cir.1979) (citations and footnotes omitted).

Defendant, apparently forgetting that the sentencing entrapment issue was raised by counsel at sentencing and on appeal, argues only that his sentencing counsel was ineffective in failing to raise this claim in those proceedings. Nevertheless, the Court will address all of the above exceptions to the rule that a § 2255 motion may not be used to

relitigate issues raised and considered on direct appeal.[1]

### C. Defendant's Ineffective Assistance of Counsel Claim

#### 1. Standard for Consideration of Ineffectiveness Claims

Defendant's ineffective assistance of counsel claim is controlled by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court of the United States set forth the standard for consideration of such claims. Justice O'Connor wrote that:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment [to the Constitution of the United States]. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death penalty resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 687, 104 S.Ct. at 2064.

Moreover, to show actual ineffectiveness of counsel, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment [,]" and the court must find that the attorney's actions were not the result of such judgment. *Id.* at 690, 104 S.Ct. at 2065–66. The Supreme Court has emphasized the difficulty of making such a showing, stating "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

For the reasons that follow, the Court concludes that it committed no error at sentencing and that counsel's decisions at sentencing were not erroneous.

#### 2. Agent Tropea's Testimony At Sentencing

██ Defendant contends that allowing an expert witness to testify about the meaning of code words used in the taped conversations he had with the cooperating witness violated Rules 701 and 702 of the Federal Rules of Evidence. That argument could have been, but was not, raised on direct appeal, and is therefore procedurally barred. *See United States v. Frady*, 456 U.S. 152, 162–63, 102 S.Ct. 1584, 1591–92, 71 L.Ed.2d 816 (1982); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir.1993). Defendant attempts to circumvent the bar by alleging that his counsel was ineffective at sentencing for failing to object to the admission of that testimony. That argument is without merit.

The Federal Rules of Evidence do not apply at sentencing hearings. Federal Rule of Evidence 1101(d)(3) states that "[t]he rules (other than with respect to privileges) do not apply [to] ... sentencing." Fed.R.Evid. 1101(d)(3). Instead, evidence at sentencing is governed by USSG § 6A1.3. That section provides that "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information *without regard to its admissibility under the rules of evidence*

---

1. Although the government did not raise the issue, it should be noted that defendant's § 2255 motion may be time-barred pursuant to the amendments to § 2255 made by the Anti–Terrorism and Effective Death Penalty Act of 1996, P.L. 104–32, 110 Stat. 1214 (effective April 24, 1996). The amendments create a one year time period for the filing of § 2255 motions. The one year time limit begins running at the latest of four specified dates. Because defendant filed his Motion on March 22, 1996, which was before the effective date of the Act, the time limit is only applicable to his Motion if that provision of the Act is to be applied retroactively. However, because defendant's Motion fails on the merits, the Court need not decide that question, nor the question of whether there is a time-bar in this case. *See United States v. Hawkins*, No. 93–221–01, 1996 WL 617430, *2 n. 3 (E.D.Pa. Oct.22, 1996) (finding that because the defendant's § 2255 motion failed on the merits the Court need not reach the time-bar issue); *Nixon v. United States*, No. 93–386–4, 1996 WL 539786, *1 (E.D.Pa. Sept.17, 1996) (same) The other amendments to § 2255 included in the Anti–Terrorism and Effective Death Penalty Act have no bearing on defendant's motion.

*applicable at trial,* provided that the information has sufficient indicia of reliability to support its probable accuracy." USSG, § 6A1.3 (emphasis added).

At sentencing, as required by § 6A1.3, the Court concluded that Agent Tropeas testimony "ha[d] a sufficient indicia of reliability to support its probable accuracy." Sentencing Transcript, 127. This conclusion was based upon the Court's evaluation of Agent Tropea's experience and his credibility. The Court found Agent Tropea credible, and was satisfied that his investigation of more than one-hundred (100) criminal matters during his more than ten (10) year career in law enforcement qualified him to testify as he did. Sentencing Transcript, at 77, 85, 86. Because Agent Tropea's testimony was admissible under § 6A1.3, the Court considered his testimony at the sentencing hearing as to the definition of a number of coded terms used by defendant and the cooperating witness during the tape recorded conversations, and that defendant's statement to the cooperating witness, "if they get caught, let me know," meant that the witness was to notify defendant if the "Young Boys" were caught by the police, so that defendant could contact his straw purchaser, who could then report the firearms as stolen. *Id.* at 86–100.[2]

Defendant contends that Agent Tropea's testimony was based on hypothetical facts in violation of the principles set forth in *United States v. Boyd,* 55 F.3d 667 (D.C.Cir.1995). That case is inapposite because it involved trial testimony, which is, unlike sentencing testimony, governed by the Federal Rules of Evidence. Moreover, in *Boyd* "the prosecutor simply restated the facts of [that] case in his question to [the witness] and, although termed as a hypothetical, that question was plainly designed to elicit the expert's testimony about the intent of the defendant." *Id.* at 672. Because intent was an element of the crime charged, the Court of Appeals concluded that the testimony was admitted in violation of Federal Rule of Evidence 704(b),

which prohibits expert testimony as to whether a defendant had the mental state constituting an element of the charged crime. *Id.*

The instant case differs greatly from *Boyd.* Agent Tropea did not testify in response to a hypothetical question. He was only asked to explain certain code words, which he did. That is entirely proper.

█ In sum, the Federal Rules of Evidence do not apply at sentencing. Agent Tropea's testimony was properly received at sentencing because it had sufficient indicia of reliability to support its probable accuracy. Moreover, Agent Tropea's testimony would have been plainly admissible if offered at trial, where the Federal Rules of Evidence do apply. Because the court concludes that there was no error in admitting the testimony, counsel's decision not to object to that testimony was entirely appropriate and affords no basis for defendant's ineffective assistance of counsel argument.

### 3. Defendant's Criminal History Category

█ Defendant's contention that his sentence was improperly calculated because his criminal history category over-represented his criminal history was not raised on direct appeal and is therefore procedurally barred. *See United States v. Frady,* 456 U.S. 152, 162–63, 102 S.Ct. 1584, 1591–92, 71 L.Ed.2d 816 (1982); *United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993). Furthermore, defendant's attempt to avoid the bar by alleging his counsel was ineffective in failing to raise this argument at sentencing is without merit.

As set forth in the Presentence Investigation Report ("PSI"), defendant had six (6) criminal history points and, therefore, was placed in Criminal History Category III. That calculation was based on defendant's criminal history, set forth in the PSI as follows:

---

2. On cross-examination, Agent Tropea testified that it was clear to him that the defendant understood his buyer was a drug dealer. Sentencing Transcript, at 105. Defense counsel objected to Agent Tropea's suggestion that he knew what the defendant "understood," and the Court made clear that it would not consider any such statements as evidence of what the defendant actually thought, stating that Agent Tropea's testimony would only be considered so far as he explained what certain statements meant to him as an agent. *Id.* at 119.

In January of 1979, at the age of 20, defendant was arrested for robbery, and on May 19, 1980 was sentenced to five (5) years of probation for that crime. He violated that probation and was sentenced, on December 15, 1982, to three (3) to ten (10) years imprisonment. In March of 1979, defendant was arrested and charged with aggravated assault and simple assault after attempting to take a police officer's baton and strike the officer with it. He was found guilty of simple assault, and on July 3, 1979, was fined $200, and ordered to pay $60 in court costs. In April of 1979, at age 21, defendant broke into a residence at 5:55 a.m. and threatened to kill the complaining witness, for which he was charged with burglary, criminal trespassing, terroristic threats, recklessly endangering another person, aggravated assault, possessing an instrument of a crime, and criminal mischief. He was convicted of criminal mischief and on May 10, 1979, he was sentenced to three (3) months in Philadelphia County Prison for that crime. In September of 1979, defendant was charged with unauthorized use of a motor vehicle, theft by unlawful taking, and receiving stolen property. He was convicted of unauthorized use of a motor vehicle and, on June 12, 1980, was sentenced to two (2) years of probation. In February of 1982, defendant, then age 23, was charged with terroristic threats, defiant trespass, simple assault, carrying a firearm without a license, carrying a firearm in a public street or place, and possession of a firearm by a convicted felon. He was convicted on all charges other than possession of a firearm by a convicted felon and, on October 14, 1982, sentenced to six and a half (6½) to twenty-three and a half (23½) months imprisonment to be followed by three (3) years of probation.

Defendant argues that he was entitled to a downward departure under USSG § 4A1.3, a policy statement, to reflect his overstated Criminal History Category. In relevant part, USSG § 4A1.3 provides that "[t]here may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes ... and therefore consider a down-

ward departure." USSG § 4A1.3. As an example of a situation justifying a downward departure, USSG § 4A1.3 sets forth "the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." *Id.*

Defendant also argues that his Criminal History Category and the incidents leading to that categorization are analogous to those of the defendant in *United States v. Taylor,* 843 F.Supp. 38 (W.D.Pa.1993). The *Taylor* court reduced that defendant's Criminal History Category on the ground that his computed Criminal History Category significantly over-represented the seriousness of his prior crimes—a *few* burglaries committed over a period of one and a half years, while he was a teenager, that were treated as related by the state judges trying those cases. *Id.* at 46.

■ The facts of the instant case do not justify a downward departure under § 4A1.3 Most of defendant's prior offenses involved actual violence, the threat thereof, and/or weapons. Defendant's prior crimes cannot be classified as analogous to "two minor misdemeanors" as that term is used in USSG § 4A1.3 to illustrate the type of criminal history justifying a downward departure. Moreover, unlike the *Taylor* defendant, defendant was not a teenager when he committed those offenses and his offenses were not treated as related.

Having concluded that defendant's criminal history category did not over-represent his prior crimes, this Court has no doubt that it would have denied a motion for downward departure on that ground had such a motion been made at the sentencing hearing. Therefore, counsel's decision not to make such a motion cannot be considered erroneous. As a result, defendant cannot avoid the procedural bar, and his § 2255 motion will be denied with respect to his criminal history argument. *See Venezia v. United States,* 884 F.Supp. 919 (D.N.J.1995) (concluding that defendant's § 2255 petition should be denied because there was no basis for a downward departure motion and had such a motion

been made at the sentencing hearing it would have been denied).

### 4. Defendant's Family Circumstances

■ Defendant also contends that his sentence was improperly calculated because the Court did not consider his allegedly exceptional family circumstances in making that calculation. Defendant's claim is procedurally barred because it could have been, but was not, raised on appeal. *See United States v. Frady*, 456 U.S. 152, 162–63, 102 S.Ct. 1584, 1591–92, 71 L.Ed.2d 816 (1982); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). Furthermore, there is no merit in defendant's argument that his counsel's decision not to raise this issue at sentencing constituted ineffective assistance.

Defendant's relevant family circumstances are as follows: He is married and has four children. His wife has a bleeding ulcer, a heart murmur, and a hernia. Although his mother-in-law helps his wife with the children, his mother-in-law has polio. Defendant provided the Court with all of this information in letters dated May 28 and June 11, 1994, and the Court considered the letters before sentencing defendant.

■ In relevant part, USSG § 5H1.6, a policy statement, provides that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." USSG § 5H1.6. Moreover, Congress' instructions to the Sentencing Commission cautioned that family ties should ordinarily have no influence on sentencing. *See* 28 U.S.C. § 994(e); *United States v. Gaskill*, 991 F.2d 82, 84–85 (3d Cir.1993). The Third Circuit has allowed such departures only in the most extraordinary of cases. *Id.* (collecting cases). The Court concludes that defendant's family circumstances are not extraordinary.

Defendant's situation is much like that of the single mother of five who was refused a downward departure in *United States v. Headley*, 923 F.2d 1079 (3d Cir.1991). Headley argued that the psychological impact on her children that would result from the lengthy imprisonment of their mother justified lightening her sentence. *Id.* at 1082.

She had been convicted of conspiring to manufacture and distribute cocaine base and marijuana and of possession of cocaine with intent to distribute. The low end of the guideline range in her case was seventeen and one-half (17½) years. Noting that every court to consider single parent status had found that such status was not an extraordinary family circumstance, the Third Circuit affirmed the district court's refusal to depart downward. *Id.* at 1082–83.

Defendant's family circumstances are considerably better than those of the *Headley* defendant. The *Headley* defendant's children were left with no parents when their mother was jailed. In the instant case, defendant's children are still cared for by their mother and grandmother. The fact that both of those women have medical problems does not alter this fact. Moreover, even if neither of those women were available to care for defendant's children due to their medical problems, the children would be placed in a situation no different than that of the *Headley* defendant's children. And, defendant's sentence of fifty-three (53) months imprisonment is far less than the *minimum* sentence the *Headley* defendant was to serve.

Defendant argues that his family circumstances are similar to those of the *Gaskill* defendant. That defendant was convicted of a minor crime, and the sentencing court had " 'reluctantly' denied [defendant's] motion for downward departure ..." *Gaskill*, 991 F.2d at 83, 84. Holding that "the length of imprisonment mandated by the Guidelines and the nature of the offense are also circumstances that should be factored into the equation[,]" the *Gaskill* court remanded for re-sentencing because *the circumstances of that case were "quite out of the ordinary." Id.* at 85, 86 (emphasis added).

However, the *Gaskill* court cautioned that the "[d]isintegration of family life *in most cases* is not enough to warrant departures." *Id.* at 85 (emphasis added). And, more important, that court placed significant emphasis on the fact that "[t]here [had] been no indication that the defendant has a violent nature nor [was] the offense with which the defendant [was] charged classified as a vio-

lent crime. Thus, the concerns to protect the public from violence or serious transgressions such as large scale drug dealings are not present in this case." *Id.*

The defendant in the case *sub judice* does not fit the *Gaskill* model. Rather, defendant has a history of crimes involving actual violence, the threat of violence, and the use of weapons. Moreover, the crime for which he was sentenced by this Court involves weapons and the distribution of drugs, which implicate the concerns the *Gaskill* court stated should militate against a downward departure. Furthermore, the defendant's sentence under the Guidelines is a significant one—fifty-three (53) months—far more than the eight (8) months at issue in *Gaskill.* Each of these factors militates against the Court classifying defendant's case as out of the ordinary.

For the reasons set forth above, this Court has no doubt that it would have denied a motion for downward departure based on family circumstances had such a motion been made at the sentencing hearing. Therefore, counsel did not err in not making such a motion, and defendant's motion will be denied with respect to his family circumstances argument. *See Venezia v. United States*, 884 F.Supp. 919 (D.N.J.1995).

### 5. Sentencing Entrapment

Defendant claims that he was the victim of sentencing entrapment, and that his sentence was therefore illegally enhanced by the government's conduct. Defendant's sentencing entrapment claim was raised on appeal and this Court's decision was affirmed.

As a general rule, a district court will not allow a defendant to relitigate a claim raised on direct appeal and adjudicated on the merits. *United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir.1993). That rule is, however, subject to four exceptions: 1) newly discovered evidence that could not have reasonably been presented at trial, 2) a change in the applicable law, 3) incompetent counsel in the earlier proceedings, and 4) other circumstances that show that the accused did not receive full and fair consideration of his federal constitutional and statutory claims. *United States v. Palumbo*, 608 F.2d 529, 533 (3d Cir.1979) (citations and footnotes omitted). Therefore, this Court will only reconsider defendant's sentencing entrapment argument at this time if defendant's claim fits one of four exceptions to the general rule.[3] *See id.*

Because defendant does not suggest that any new evidence supports his claim, he may not avail himself of the first exception to the general rule barring the relitigation of claims reviewed on the merits on direct appeal. Nor may defendant avail himself of the second exception because he does not allege that the law of sentencing entrapment has changed in the time between sentencing and the filing of his § 2255 Motion.

Defendant attempts to avail himself of the third exception, mistakenly arguing that counsel did not raise the sentencing entrapment argument at sentencing or on appeal. Contrary to defendant's assertion, defense counsel explicitly argued to this Court that sentencing entrapment was applicable to this case. *See* Defendant's Sentencing Memorandum ("[T]here is no factual basis to support the probation officer's conclusion that the defendant intended that the guns be used in

---

**3.** It should be noted that the sentencing entrapment portion of defendant's memorandum includes his argument that *United States v. Bruce*, 939 F.2d 1053 (D.C.Cir.1991), supports the proposition that a conviction under 18 U.S.C. § 924(c) requires that a gun be "used" in relation to a drug trafficking crime, rather than merely "possessed" in relation thereto, and that because he did not "use" the guns he sold, enhancement under USSG § 2K2.1(b)(5) is inappropriate. The short answer to that argument is that the *Bruce* case is inapposite to the sentencing enhancement at issue.

Section 2K2.1(b)(5) provides for a four (4) level increase in offense level "[i]f the defendant ...

possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense...." And, Comment 7 to § 2K2.1 states that " '[f]elony offense,' as used in subsection (b)(5), means any offense (federal, state, or local), punishable by imprisonment for a term exceeding one year, *whether or not a criminal charge was brought, or conviction obtained.*" (emphasis added). In the instant case, defendant's sentence was enhanced because he transferred the firearms with reason to believe they would be used in connection with drug trafficking, *not* because of an uncharged § 924(c) violation.

drug trafficking.... The informant was acting as an agent of the government and undoubtedly was instructed to make this remark [referencing drug dealers] for no other reason than to enhance the defendant's sentence."); Sentencing Transcript, at 54. On appeal, defendant's counsel renewed this argument, writing in his brief that the government had engaged in impermissible sentencing entrapment by ordering the cooperating witness to "create" the drug dealers, even though he did not actually intend to use the guns in relation to drug dealing. *See* Appellant's Brief, 3d Cir. No. 94–1753 (filed Mar. 14, 1995). Thus, defendant's contention that counsel was ineffective in failing to raise that claim must be rejected.

■ Moreover, the Court's ruling on sentencing entrapment was entirely proper. The Third Circuit has yet to address the validity of the theory of sentencing entrapment. *United States v. Raven,* 39 F.3d 428, 438 (3d Cir.1994) ("We have not as yet had occasion to address the theory of sentencing entrapment ... and we do not do so today...."). However, this Court concludes that even if that theory were adopted in this Circuit, the theory would not apply to the instant case.

Sentencing entrapment has been defined in drug cases as "'outrageous official conduct [that] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amount of drugs in the conspiracy and the resulting sentence of the entrapped defendant." *United States v. Rogers,* 982 F.2d 1241, 1245 (8th Cir.1993) (quoting *United States v. Lenfesty,* 923 F.2d 1293, 1300 (8th Cir.1991)) (alteration in original). Defendant argues that the doctrine is applicable in this case because the government allegedly asked the cooperating witness to refer to non-existent drug dealers as the end-users of the firearms defendant sold, thereby resulting in an increase in defendant's sentence from that which he would have received had drug dealers not been mentioned.

Defendant commingles a "regular" entrapment argument with his sentencing entrapment argument. In attempting to set forth a sentencing entrapment claim, defendant ar-

gues that the confidential witness called him more than twenty times before he agreed to sell weapons to the confidential witness, and that those calls were forceful solicitation that induced him to sell the arms. Defendant cites a number of "regular" entrapment cases to support his claim.

■ By pleading guilty, defendant waived any "regular" entrapment defense. *See United States v. Riles,* 928 F.2d 339, 342 (10th Cir.1991); *United States v. Sarmiento,* 786 F.2d 665, 668 (5th Cir.1986); *Peoples v. United States,* 412 F.2d 5, 7 (8th Cir.1969). Moreover, because the telephone calls are the only evidence offered by defendant in support of his sentencing entrapment claim, and because those calls speak only to a "regular" entrapment defense, that claim must fail as well.

Defendant does not point to any evidence upon which this Court could base a finding that the government engaged in "outrageous" or "extraordinary" misconduct that led to an increase in his sentence. He does not even allege that he ever questioned or objected to the statement of the confidential witness that the guns were to be used in drug trafficking. Thus, defendant's sentencing entrapment claim must fail.

Finally, the Court concludes that defendant may not avail himself of the fourth exception to the general rule that § 2255 motions may not be used to relitigate claims decided on their merits on direct appeal. The Court has carefully reviewed the record with respect to defendant's sentencing entrapment claim and is of the view that there was no such entrapment in this case and that counsel's handling of the issue was appropriate.

### D. An Evidentiary Hearing is Not Required in This Case

Defendant requests an evidentiary hearing on his claims. The government contends that no hearing is necessary.

The Third Circuit first set forth the applicable standards for the denial of an ineffective assistance of counsel based § 2255 motion without a hearing in *Government of the Virgin Islands v. Bradshaw,* 726 F.2d 115

(3d Cir.1984). The court noted that "[t]he question [of] whether to order an evidentiary hearing is committed to the sound discretion of the district court." *Id.* at 117 (citation omitted). However, the Court stated that there are two significant restrictions on the discretion of a district court to deny such a hearing. First, "the district court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Id.* (citation omitted). Second, "the court must order an evidentiary hearing to determine the facts 'unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Id.* (quoting *United States v. Williams,* 615 F.2d 585, 591 (3d Cir.1980)). However, the court also stated that if a movant's claims present a close question, the district court need not hold an evidentiary hearing. *Id.* Rather, "[t]he district court need only supplement the factual record when the merits of the section 2255 motion may turn on the truth of a non-frivolous allegation." *Id.*

In 1988, the Third Circuit considered the effect of the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and concluded that "the *Bradshaw* test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding." *United States v. Dawson,* 857 F.2d 923, 927 (3d Cir.1988). The Third Circuit wrote that, in considering whether an evidentiary hearing is necessary, "the district court must employ the *Strickland* analysis ... on colorable claims after full factual development of those claims." *Id.* at 928. Although a hearing may be required to fully develop the facts, "[i]f a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *Id.* at 927–28 (emphasis added).

■■■ In the instant case, the factual record need not be supplemented for this Court to rule on defendant's § 2255 motion. The sentencing transcript, Presentence Investigation Report, and the other evidence available to the Court at sentencing contain all of the information needed by the Court to decide defendant's Motion. And, wherever facts were at issue the Court accepted the truth of defendant's allegations.

■■■ This Court has applied the *Strickland* test to each of defendant's claims of ineffective assistance of counsel and has concluded that those claims conclusively fail under that test. Therefore, no evidentiary hearing is required on those claims. *Dawson,* 857 F.2d at 927–28. With respect to the remaining issues addressed by the Court, no evidentiary hearing is needed because defendant is not entitled to relief based on the facts set forth in his Motion. *United States v. Friedland,* 83 F.3d 1531, 1542 (3d Cir. 1996) (citing *Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989)) ("Friedland finally argues that the court erred in denying him an evidentiary hearing. We see no basis for this argument, as the undisputed facts show that he was not entitled to relief.").

## III. CONCLUSION

Defendant's claims are wholly without merit, and therefore, the Court will not modify his sentence. Moreover, in reference to defendant's ineffective assistance of counsel claims, the Court notes again, as it did just before imposing defendant's sentence, that defendant should tell himself he "was pretty lucky [to] have a feisty lawyer who really slugged it out and I don't know that the Government would have withdrawn the obstruction of justice charge had we not gone through such a fight ... [a]nd the difference [in my sentence] is dramatic." Sentencing Transcript, at 155. The representation provided by that attorney was more than constitutionally adequate.

For the reasons set forth above, defendant's Motion under 28 U.S.C. § 2255 will be denied.

An appropriate Order follows.

### *ORDER*

**AND NOW,** to wit, this 4th day of March, 1997, upon consideration of Defendant's *Pro Se* Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (Document

No. 43, filed March 22, 1996), Government's Opposition to Abbott's Motion Under § 2255 (Document No. 45, filed April 10, 1996), Defendant's *Pro Se* Reply to Government's Response to Motion Under Title 28, United States Code, Section 2255, to Vacate, Set Aside or Correct Sentence (Document No. 46, filed April 29, 1996), and Defendant's *Pro Se* Petition to Amend Reply to Government's Response to Motion Under Title 28, United States Code, Section 2255 (Document No. 48, filed December 27, 1996), for the reasons set forth in the Memorandum accompanying this Order, **IT IS ORDERED** that:

1. Defendant's *Pro Se* Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 is **DENIED;** and,

2. Defendant's Request for an Evidentiary Hearing is **DENIED.**