**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

v.

**HENRY C. BRADSHAW, Appellant**

Civil No. 77-1914

United States Court of Appeals

Third Circuit

Argued December 5, 1977

Filed January 24, 1978

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *for appellant*

JULIO A. BRADY, ESQ., U.S. Attorney, Christiansted, St. Croix, V.I., *for appellee*

Before ADAMS, ROSENN and HUNTER, *Circuit Judges*

HUNTER, *Circuit Judge*

Henry C. Bradshaw appeals his judgment of conviction for first degree murder. After his trial by jury in the District of the Virgin Islands, he was sentenced to life imprisonment. The appeal challenges the sufficiency of the evidence supporting the verdict and raises the question of whether a new trial should be granted because the trial judge, now, on appeal, concededly in error, allowed defendant to exercise only five peremptory challenges

instead of ten.[1] For the reasons discussed below, we affirm.

I

Defendant was charged with first degree murder, 14 V.I.C. § 922(a)(1), by an information filed November 12, 1976. Trial commenced February 28, 1977. At the start of jury selection the trial judge indicated that the law allowed defense only five peremptory challenges. Defense counsel used all five strikes.

The jury returned a guilty verdict on March 3, 1977. The hearing on sentencing was held on March 30. Bradshaw was given the mandatory sentence for first degree murder, life imprisonment without parole or probation. 14 V.I.C. § 923(a).

The facts as developed at trial were as follows. On March 7, 1976, Marilyn Pickering, a St. Thomas resident, registered at a hotel in Christiansted, St. Croix. The following morning she was found shot to death. An expert testified at trial that she had been dead for at least twelve hours before her body was found. The victim had been shot twice with a .38 caliber weapon. An autopsy showed a .22 percent level of alcohol in her blood at the time of her death and the presence of epoxy in her digestive tract. No gun was found, but a test done by investigators showed that decedent had not fired any weapons.

According to his testimony, Bradshaw became acquainted with decedent a month before the killing, when she hired him as a private detective. Subsequently, the two developed a close personal relationship. He testified that decedent had asked him to accompany her to St. Croix

---

[1] In oral argument counsel also raised a third point intimated in his brief, whether the instructions to the jury on the requirement of a finding of a "willful, deliberate, and premeditated" killing were adequate. Trial counsel made no objection to this instruction, and we find no plain error. See F.R. Crim. P. 30; Government of the Virgin Islands v. Navarro, 513 F.2d 11, 16 (3d Cir.), cert. denied, 422 U.S. 1045 (1975).

on the day of the shooting. Bradshaw arrived by seaplane on the island from St. Thomas the same morning as decedent though on a different flight. He had traveled under an assumed name.

Two hotel employees testified that they saw defendant that afternoon at the hotel. One saw him walking towards decedent's room at about 1:00 p.m. Bradshaw's fingerprint was found on a drinking glass in the room.

Although Bradshaw and one witness testified that he returned to the seaplane terminal at 3:45 p.m., two witnesses placed him there between 4:30 and 5:00 p.m. Employees at the hotel testified that they had heard a gunshot or explosion coming from the vicinity of decedent's room between 4:00 and 4:30 p.m.

After returning to St. Thomas by seaplane under another false name, Bradshaw flew under his own name to Puerto Rico for an overnight stay.

When contacted by investigators, Bradshaw acknowledged that he owned a licensed .38 caliber Smith and Wesson revolver. He informed them, however, that the gun had that day been stolen from his car trunk. The investigators testified that they inspected the car and found no signs of tampering or break-in.

Questioned about his activities on November 7, Bradshaw told police that he had spent the day fixing his car on St. Thomas and then flew to Puerto Rico for an overnight visit. Bradshaw was later arrested.

II

At the close of the government's case against him, defendant made a motion for acquittal based on the insufficiency of the evidence. The motion was denied.

■ The government's brief in this appeal claims that the motion was not renewed before the jury retired

nor made within seven days of the jury's verdict under F.R. Crim. P. 29(c). Defendant's appellate counsel does not dispute this observation in his brief nor did he at oral argument. Nonetheless, in our review of the record, we have found a paper entitled "Motion for Judgment of Acquittal" dated March 7, 1977 and stamped as filed on March 10. The paper has been placed out of its chonological sequence in the record. The record indicates that the motion was heard and denied on March 30, 1977. Since the March 10 motion was filed within seven days of the March 3 jury verdict, it was timely under Rule 29(c). Contrary to the assumptions of both counsel on appeal, we find that the motion for acquittal has been properly preserved for appellate review.

■ The standard to be used in judging the sufficiency of the evidence after a properly preserved motion for acquittal has been made is whether, viewing all the evidence adduced at trial in the light most favorable to the government, there is substantial evidence from which the jury could find guilt beyond a reasonable doubt. Government of the Virgin Islands v. Peterson, 507 F.2d 808, 900 (3d Cir. 1975); Government of the Virgin Islands v. Lanclos, 477 F.2d 603, 606 n.3 (3d Cir. 1973). The standard does not differ when the government's case is based on circumstantial rather than direct evidence. United States v. Boyle, 402 F.2d 757 (3d Cir. 1968).

Although there were no witnesses to the killing of Marilyn Pickering, there is sufficient evidence in the record to support the jury's verdict that Bradshaw is guilty of first degree murder. Defendant by his own admission was on the Island with decedent. He was seen near her hotel room close to the time of the shooting, and his fingerprint was found in the room. He admittedly owned a gun of the type and caliber which fired the fatal bullets. Further, Bradshaw was seen at the seaplane ter-

minal the morning of November 7 with a briefcase and in the hotel with a briefcase and a large envelope. Bradshaw testified that he usually carried his gun in his briefcase. The jury could have concluded from this evidence that Bradshaw had the opportunity to commit the crime.

Bradshaw traveled both ways between St. Thomas and St. Croix under an assumed name. While Bradshaw flew from St. Thomas to St. Croix, back to St. Thomas, and then to Puerto Rico on November 7, he had earlier told his former wife that he would spend the day in Puerto Rico. This evidence would support a conclusion that Bradshaw had attempted to conceal his trip to St. Croix as a part of planning the murder.

Bradshaw was also connected to the killing by evidence that he attempted to conceal the crime. Defendant told his former wife, his employer and police that he had traveled only to Puerto Rico on November 7. When returning to the St. Croix airboat station the afternoon of the 7th, he told an employee there that he had come from Frederiksted. He testified that his gun, the same type and caliber which had been used in the killing, had been stolen from him the same day that police came to question him. While he claimed that the trunk of his car was broken into while the car was parked in his employer's lot, police at the scene found no evidence of a break-in. The jury, from all of this material, is supported in its finding that Bradshaw was the killer.

The circumstances of the murder could well have led the jury to conclude that the killing was a willful, deliberate, and premeditated act. The victim was quite drunk at the time of her killing. Her stomach was found to contain some epoxy, a substance which an expert at trial testified would not likely have been accidentally ingested. Some rat poison was also found in her room. From this the jury could have concluded that the decedent's resistance was low and that an attempt had been made to poison her

before she was shot. Combining this evidence with the supportable conclusion that Bradshaw before the shooting had attempted to conceal his trip to St. Croix and that he had carried his gun with him on the trip although not doing work at the time as a private detective, the first degree murder verdict is supported by substantial evidence. See Government of the Virgin Islands v. Lake, 362 F.2d 770, 775–76 (3d Cir. 1966).

Bradshaw's principal defense was an alibi, that he was seen at the seaplane terminal at 3:45 p.m., while the shots were heard in the hotel between 4:00 and 4:30 p.m. One witness corroborated the alibi.

The jury, however, may have simply disbelieved the alibi. The supporting testimony came from defendant and from a policeman who was a friend of defendant's brother. The government produced two witnesses who testified that Bradshaw was at the seaplane terminal between 4:30 and 5:00 that afternoon, thus rebutting the evidence of alibi. Further, there was evidence that a clock had been torn from the wall of defendant's hotel room and was found showing a time of 4:40 p.m. This incident could be interpreted as an early step by defendant to contrive an alibi.

In summary, while the case against Bradshaw is not based on direct testimony, there is substantial evidence that the killing of Marilyn Pickering was a willful, deliberate, and premeditated act, that Bradshaw had the opportunity to commit the crime, that he planned to conceal his presence on St. Croix both before and after the murder, and that Bradshaw hid or destroyed the murder weapon. We hold that the record contains substantial evidence to support the verdict in this case.

### III

The second contention defendant raises on appeal is that the judge committed reversible error by granting

only five peremptory challenges. The government now concedes that the trial judge made an error in allocating peremptory strikes to the parties. When the judge was asked by defense trial counsel whether he would be inclined to grant more than the usual number of peremptory challenges,[2] the judge responded

No, I am not, not at all. The normal amount now is five.

The United States attorneys present affirmed that the law permitted five. The judge and the United States attorneys were following the proposed amendment to Federal Rule of Criminal Procedure 24(b) which was transmitted to Congress by the Chief Justice of the United States on April 26, 1976. The amendment would have changed the number of peremptory strikes allowed in single-defendant non-capital cases involving punishment of imprisonment for more than one year from ten to five.[3] See Proposed Amendment to F.R. Crim. P. 24(b), H.R. Doc. No. 94-464, at 1–6 (1976), reprinted in 44 U.S.L.W. 4549 (U.S. April 27, 1976). The amendment was to have taken effect on August 1, 1976.

On July 8, 1976, Congress postponed the effective date of the amendment to Rule 24(b) until August 1, 1977. 90 Stat. 822, see 425 U.S. 1157 (1976). On July 30, 1977, a second bill was signed disapproving the amendment. 91 Stat. 319.

Bradshaw's jury was selected on February 28, 1977. The law effective on that date, as now, entitled him to ten peremptory challenges. Although the trial judge made it clear that he would allow only five strikes, we find that reversal is not appropriate since defendant waived objection to the ruling.

---

[2] But see Blount v. Jugoslavenska Linijska Plovidba, No. 75-2025 (3d Cir. filed Dec. 8, 1977).

[3] The current version of Fed. R. Crim. P. 24(b) provides in part:

If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges.

There is no question of the good faith of the trial judge or of the government attorneys in this case. The record reflects that they simply were not aware of the Congressional decision to delay implementation of the amendment to Rule 24(b). Defendant does not contend otherwise.

■ The record shows that defense counsel not only failed to preserve an objection to the decision of the trial judge, but also that he accepted the ruling. During the discussion over the number of challenges, trial counsel first noted that he thought that he would be entitled to ten peremptory challenges plus one extra for the alternates to be chosen. The judge responded that ten was the number under the "old rules." After some further discussion, defense counsel concluded:

I would like to double check that. You sound like you are not absolutely sure about the rule.

When the jury was finally impaneled after a short recess, both counsel affirmatively stated that they were satisfied with the composition of the jury. There was never an explicit objection that the amendment had not come into effect, and at no point during the four-day trial did defendant raise issue again.

■ Once told by defense counsel that he would "double check" the law on peremptory challenges, the court was justified in assuming that counsel would do so and bring any error of law to the court's attention. Instead, the argument of law on the number of strikes is presented now for the first time on appeal. Under these circumstances, we hold that counsel waived objection to the denial of the five additional peremptory strikes. See generally Estelle v. Williams, 425 U.S. 501, 508 (1976); Government of the Virgin Islands v. Torres, 476 F.2d 486, 490 n.2 (3d Cir. 1973).

Finding no reversible error, we affirm.