## GOVERNMENT OF the VIRGIN ISLANDS

v.

## BRADSHAW, Henry C.*

**Appeal of Henry C. BRADSHAW.**

No. 83–3222.

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1983.

Decided Feb. 2, 1984.

Rehearing and Rehearing In Banc Denied Feb. 28, 1984.

* Appellant's middle initial is erroneously given as "E" on the district court docket sheet. We correct it here.

Ronald C. Travis (argued), Murphy, Mussina, Harris, Travis, Rieders & Humphrey, Williamsport, Pa., for appellant.

Douglas L. Capdeville, Asst. U.S. Atty. (argued), James W. Diehm, U.S. Atty., Christiansted, St. Croix, U.S.V.I., for appellee.

Before HUNTER, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

On March 3, 1977, appellant Henry C. Bradshaw was convicted of first degree murder and sentenced to life imprisonment following a jury trial in the United States District Court of the Virgin Islands. This court upheld that conviction on direct review. *Government of the Virgin Islands v. Bradshaw,* 569 F.2d 777 (3d Cir.), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3070, 57 L.Ed.2d 1121 (1978). Bradshaw then moved in the district court, pursuant to 28 U.S.C. § 2255 (1976), to set aside his conviction. His motion alleged that his trial attorney had failed to render effective legal assistance. The district court determined that Bradshaw's motion could be resolved on the basis of the allegations in the motion and the materials already on file in the district court. Bradshaw's motion to set aside the conviction was denied, and this appeal followed. For the reasons set forth below, we will affirm the order of the district court denying Bradshaw's motion.

### I.

Ineffective assistance of counsel is the only ground that Bradshaw advances for setting aside his conviction. His motion asserts three separate allegations in support of his claim of ineffective assistance:

(1) His attorney refused to locate and interview two alibi witnesses whose proposed testimony is described in Bradshaw's motion.

(2) His attorney failed to suggest appropriate questions for *voir dire,* as a result of which the fiancee of the officer who arrested him was empaneled on the jury.

(3) His attorney waived the right to exercise an additional five peremptory challenges, as a result of his mistaken

view of the state of the law at the time of trial.

Bradshaw urges that his conviction should be set aside on the basis of matters already contained in the record, but he argues in the alternative that it was error for the district court to refuse to order an evidentiary hearing to develop the facts underlying his ineffective assistance claim. *See United States v. Baynes,* 622 F.2d 66, 68 (3d Cir.1980) (review of refusal to grant an evidentiary hearing).

■ We recognize at the outset that Bradshaw bears the burden of proving his claim of ineffective assistance of counsel. *Id.* at 69. Bradshaw must demonstrate that the representation he received at trial was "constitutionally inadequate," *United States ex rel. Johnson v. Johnson,* 531 F.2d 169, 174 (3d Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), and that he was prejudiced by his attorney's inadequacies, *United States v. Swinehart,* 617 F.2d 336, 340 (3d Cir.1980). The constitutional right to effective assistance of counsel demands that the defendant's attorney exercise "the customary skill and knowledge which normally prevails at the time and place" of trial. *Johnson,* 531 F.2d at 174 (quoting *Moore v. United States,* 432 F.2d 730, 736 (3d Cir.1970)).

■ The question whether to order an evidentiary hearing is committed to the sound discretion of the district court. *Page v. United States,* 462 F.2d 932, 933 (3d Cir.1972). In exercising that discretion, however, the district court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. *United States v. Williams,* 615 F.2d 585, 591 (3d Cir.1980). Further, the court must order an evidentiary hearing to determine the facts "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.; see* 28 U.S.C. § 2255 (1976).

These requirements do not mean that an evidentiary hearing must be held whenever the movant's ineffective assistance claim presents a close question. The district court need only supplement the factual record when the merits of the section 2255 motion may turn on the truth of a non-frivolous allegation. In this case, we strictly adhere to our prior case law and evaluate Bradshaw's motion under the assumption that all his allegations are factually correct. Under that standard we find, for the reasons set forth below, that Bradshaw has not made out a claim of ineffective assistance of counsel.

II.

**A.** *Bradshaw's Proffered Alibi Witnesses*

Bradshaw asserts that he informed his attorney of two potential alibi witnesses. The first, a woman with whom Bradshaw claims to have spent part of the evening of the murder but whose name he cannot now recall, would have testified that Bradshaw was in Puerto Rico as of 7:00 p.m. that night. The second witness described by Bradshaw was a Puerto Rican switchboard operator who would have testified that Bradshaw spoke to her at 5:45 p.m. on the day of the murder and claimed to be at the St. Thomas airport destined for Puerto Rico.

The fatal flaw in Bradshaw's argument is that the proposed testimony set forth in his motion is simply irrelevant to the proofs upon which he was convicted or the alibi that he offered at trial. Witnesses testified that they heard a gunshot from the vicinity of the victim's hotel room at 4:15 p.m. [Transcript at 50–51; 61–64]. The government attempted to prove that Bradshaw could have been present in the hotel room at that time; independent evidence, including Bradshaw's testimony, demonstrated that Bradshaw was in the hotel room at some time on the afternoon of the murder. [Transcript at 752–54]; *see Bradshaw,* 569 F.2d at 779, 780. Bradshaw and another witness testified at trial that Bradshaw was at the seaplane terminal at 3:45 p.m.; two government witnesses placed him there between 4:30 p.m. and 5:00 p.m. *Id.* at 780. Neither story is inconsistent with the prof-

fered testimony of the unnamed switchboard operator that Bradshaw claimed to be at the airport at approximately 5:45 p.m. or the proposed testimony that Bradshaw was in Puerto Rico as of 7:00 p.m.

■ It is thus clear that the testimony described in Bradshaw's motion is devoid of probative value—it neither advances his cause nor discredits the government's case. *See Johnson,* 531 F.2d at 178 (proposed testimony not "helpful" and had little "probative force"); *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir.1970) (burden on defendant to prove that proffered evidence would be helpful). In addition, because these two witnesses had no contact with Bradshaw while he was in the Virgin Islands, there is little possibility that they would have supplied counsel with additional information about Bradshaw's whereabouts at the time of the murder. Further, Bradshaw's attorney did locate several alibi witnesses and skillfully developed their testimony at trial. Thus, Bradshaw's allegations on this score do not support the grant of an evidentiary hearing and cannot aid his claim of ineffective assistance of counsel.

B. *Failure to Suggest Appropriate Questions for Voir Dire*

Bradshaw alleges that one of the jurors at his trial was the fiancee of the arresting officer and the mother of at least one child by the officer as of the time she sat as a juror. The arresting officer testified at trial. Bradshaw claims that the officer's fiancee was empaneled as a result of counsel's failure to request *voir dire* questions concerning the relationship of potential jurors to government witnesses and police officers.

■ We need not decide whether the alleged failure would constitute ineffective assistance of counsel. Even taking as true Bradshaw's allegations regarding the relationship of one juror to the arresting officer, it is clear from the record that the *voir dire* conducted by the court did in fact address potential jurors' relationships with attorneys, witnesses and police officers. [Transcript of Proceedings at 1, 11]. Therefore, Bradshaw's claims under this head must be rejected.

C. *Failure to Exercise Five Additional Peremptory Challenges Due to Mistake of Law*

Bradshaw contends finally that his representation at trial was constitutionally deficient because his attorney mistakenly believed that he was entitled to five peremptory challenges rather than ten. We believe that this contention, while troublesome, can be resolved without ordering an evidentiary hearing, and we hold on the specific facts of this case that counsel's mistake with respect to the law then in effect did not deprive Bradshaw of effective assistance of counsel.[1]

We have previously chronicled the circumstances that resulted in the waiver by Bradshaw's trial counsel of half his allotted peremptory challenges. *See Bradshaw,* 569 F.2d at 781. Bradshaw's trial commenced on February 28, 1977. At that time, as now, a defendant faced with the prospect of imprisonment for more than one year was entitled to challenge ten jurors without cause. Fed.R.Crim.P. 24(b). On April 26, 1976, the Chief Justice of the United States transmitted an amended Rule 24(b) to Congress that would have limited a criminal defendant tried alone to five peremptory challenges in a case of this sort. The amendment was scheduled to go into effect on August 11, 1976, seven months before

---

1. We cannot be certain whether counsel's acceptance of five peremptory challenges was the result of a mistake of law or a "tactical decision" to accept the jury as constituted after five strikes. *See United States v. Baynes,* 687 F.2d 659, 666 (3d Cir.1982); *Johnson,* 531 F.2d at 176–77 (matters of trial strategy). Bradshaw has attempted to demonstrate that a mistake occurred, and that he was prejudiced by the error, by showing that trial counsel was not able to exclude peremptorily all the jurors that he had unsuccessfully challenged for cause. He urges an evidentiary hearing on this point. Because we hold that Bradshaw cannot prove ineffective assistance even if his counsel did commit a mistake of law, we need not remand to the district court for such a determination.

the date of Bradshaw's trial. On July 8, 1976, however, Congress postponed the effective date of the amendment until August 1, 1977. On July 30, 1977, the proposed amendment was rejected. *See Bradshaw,* 569 F.2d at 781. Thus, the proposed amended rule 24(b) was not in effect at the time of Bradshaw's trial and, in fact, never went into effect.

The judge who presided over Bradshaw's trial was unaware of the history of the amendment to rule 24(b) after it was proposed by the Supreme Court. When asked by defense counsel whether additional peremptory challenges would be granted, the court responded that the "normal" five challenges would be allowed. Counsel stated his belief that he was entitled to ten peremptory strikes. The judge agreed that such was the law under the "old rules," but noted, erroneously, that rule 24(b) had been amended. The two government attorneys agreed that five challenges only were permitted by the current rules.[2] No question has ever been raised that the judge and the government attorneys in fact did not know of the congressional decision to delay the implementation of the amended rule upon which they relied.

Bradshaw's attorney acquiesced in the court's erroneous view of the law. That was his mistake. Upon that error Bradshaw fastens his present claim that his constitutional right to effective legal assistance was denied. To set aside Bradshaw's conviction on these facts, however, would be to misperceive the interest protected by the right to effective assistance of counsel.

The Constitution does not guarantee a perfect trial, nor does it mandate a flawless performance on the part of counsel. As the Supreme Court observed in another context:

> We have long recognized ... that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.

*Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982). When a party raises an ineffective assistance claim, we are not called upon simply to determine the existence and magnitude of asserted errors in the conduct of the litigation. Our focus instead must be on the total performance of the attorney, which requires that we examine the thoroughness of his investigation and preparation, the quality of his judgment and the "particular circumstances" surrounding any alleged errors and shortcomings. *Baynes,* 687 F.2d at 665.

This court's observations in *Moore v. United States,* 432 F.2d 730 (3d Cir.1970), continue to guide us in determining whether a criminal defendant has received the

---

2. The following discussion took place among the judge, counsel for Bradshaw and the government attorneys

MR. MOORE: There is one other matter about preemptory [sic] challenges.
Are you inclined to grant us more than the normal amount?
THE COURT: No, I am not, not at all. The normal amount now is five.
MR. MILLIGAN: Yes, five.
MR. BRADY: Five on each side.
MR. MILLER: I thought we got 11, the Defendant having 10, and, then, for the alternates an extra one.
THE COURT: That was under the old rules. When did that statute go into effect?
MR. MILLIGAN: I think August of 1976.
THE COURT: It is different for capital cases, but this is not a capital case, although it is close to it.
MR. MOORE: It is ten for capital cases.

THE COURT: And five for felonies. One of the reasons I am not enlarging the preemptories [sic] is I don't know if I can. In multiple defendants we can, but I don't think I can. You cited that case where a Judge gave unlimited peremptories, but I don't believe he had the authority. I don't think under the Rules, the way they are written, it says there shall be five for each side, but even if I had discretion I wouldn't like to do it because I think a lot would be eliminated for cause, and that will be our biggest problem, that is to get enough jurors selected to make up a jury because there will be a lot for cause. I would say there will be five peremptories.
MR. MILLER: I would like to double check that. You sound like you are not absolutely sure about the rule.
THE COURT: I do not know when that went into effect but I remember checking it. I do think they are in effect since August.
[Transcript at 4–5].

quality of representation that the Constitution demands—the exercise of the customary skill and knowledge prevailing at the time and place of trial:

A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard. Perfection is hardly attainable and certainly is not the general rule, especially in professional work where intuitive judgments and spontaneous decisions are often required in varying circumstances. The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seems limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. The advocate's work, therefore, is not readily capable of later audit like a bookkeeper's. Of course, not all the activity of the advocate has this highly subjective quality. It is possible to examine the sufficiency of his preparation and the adequacy of his knowledge of the relevant law. Review may disclose failures at the trial. All these are matters which will inform the judgment on a retrospective inquiry whether counsel adequately performed his duty. But since what is required is normal and not exceptional representation, there is room for the realization that it would be difficult to find a case where even the ablest and most experienced trial lawyer would be completely satisfied after a searching re-examination of his conduct of a case.

*Id.* at 736–37 (footnote omitted).

Guided by *Moore*, we must examine the knowledge, preparation and judgment of Bradshaw's counsel in light of prevailing professional standards and the particular facts of this case. Counsel's error arose when the trial judge interjected a new issue—the normal number of peremptory challenges—just as the trial was about to begin. The issue had not been briefed. Bradshaw's attorney cannot be faulted for failing to anticipate the problem, because the proposed amendment had never become law. His mistake reflected no lack of preparation or deficiency in his basic knowledge of criminal practice and procedure in the federal courts.

■ Counsel's retreat from his initial request for ten peremptory challenges was based on the good faith representation of the court and the government that the number of challenges for both sides had been reduced. They backed their assertion by citing a specific amendment to the governing rule. The court and the government attorneys appeared to be knowledgeable about the amendment, agreeing on the effective date of the new rule and the appropriate number of challenges. Indeed, the trial judge even stated that he had "checked" the new rule himself before following it. *See supra* note 2. Thus, defense counsel did not merely retreat from a non-frivolous interpretation of the law out of meekness or an inability to articulate his position. In retrospect, counsel's acquiescence was unfortunate, but *Moore* teaches that "retrospective examination" of that sort is not the test of effective assistance. Taking as true all of Bradshaw's allegations, we cannot say that his counsel failed to act with the requisite degree of skill and care in deciding on the spot whether to challenge the trial court's ruling.

This case is readily distinguishable from instances where an attorney simply refuses to exercise his peremptory challenges without regard for the possible adverse effect on his client. *Cf. Marzullo v. Maryland,* 561 F.2d 540 (4th Cir.1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) (trial counsel, *inter alia,* waived all peremptory challenges without conducting any *voir dire*). Further, we do not suggest that the right to challenge potential jurors without cause, as guaranteed by the Federal Rules, is not an important right. *See Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894) ("The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the ac-

cused."). But not every later-discovered trial error, even an error of constitutional magnitude, "render[s] the original trial fundamentally unfair." *See Engle,* 456 U.S. at 131, 102 S.Ct. at 1573.

Counsel's mistake of law, under the circumstances of this case, does not justify setting aside Bradshaw's conviction.[3] Bradshaw's attorney performed capably at trial. He called seventeen witnesses and vigorously pursued the alibi defense pressed by Bradshaw in his section 2255 motion. He conducted an effective cross-examination on the issue of identification. The two additional grounds raised in Bradshaw's motion do not serve to amplify counsel's error regarding peremptory challenges, for we have demonstrated above that counsel committed no mistake in those instances. Thus, Bradshaw has not satisfied his burden of proving that counsel's performance was constitutionally defective, nor has he mustered a convincing argument that his position could be strengthened by augmenting the record.

### III.

Accordingly, for the reasons set forth above, the judgment of the district court

denying Bradshaw's section 2255 motion will be affirmed.

---

**3.** Decisions in other circuits have also held that an attorney's failure to discover important changes in the law may not, in the circumstances of a particular case, constitute ineffective assistance of counsel. *See, e.g., Hernandez v. Beto,* 443 F.2d 634, 635 (5th Cir.), *cert. denied,* 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971) (decision changing prior law appeared in advance sheets shortly before trial). Somewhat analogous are the cases in which counsel fails to preserve an objection at trial because of a failure to anticipate a change in the law that was foreshadowed by existing precedent. Thus, in *Brunson v. Higgins,* 708 F.2d 1353 (8th Cir.1983), the appellate court rejected an ineffective assistance claim where counsel failed to challenge a Missouri jury selection system that impermissibly excluded women. The Missouri Supreme Court had previously rejected such a challenge even though the United States Supreme Court had struck down similar practices in Louisiana. *Id.* at 1355. Significantly, the district court's rejection of the ineffective assistance claim was affirmed even though no hearing had been conducted to determine whether other attorneys had been raising similar challenges or whether detailed statistical evidence would have been

available to support the claims of discrimination. *Id.* at 1358.

In *Honeycutt v. Mahoney,* 698 F.2d 213 (4th Cir.1983), the convicted defendant alleged that he received ineffective assistance due to counsel's failure to challenge a jury instruction that malice could be presumed and the burden of proof on that point shifted to defendant. Such was the established law in North Carolina regarding the presumption of malice at the time of trial. After defendant's conviction, the United States Supreme Court declared such a shift in the burden of proof to be unconstitutional, based in large part on *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), a case decided three years before defendant's conviction. The United States Court of Appeals for the First Circuit had relied on *Winship* to strike down a similar presumption of malice prior to defendant's trial. *See Wilbur v. Mullaney,* 473 F.2d 943 (1st Cir.1973), *vacated,* 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974), *order reinstated on remand,* 496 F.2d 1303 (1st Cir.1974). In spite of that foreshadowing of a change in the law, the court held that counsel's waiver of his constitutional challenge did not constitute ineffective assistance.