**William Michael STRUBE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CIV.A. 99–3094.**

United States District Court, E.D. Pennsylvania.

June 6, 2002.

William Michael Strube, Minersville, PA, pro se.

Star Nada Strube, Columbia, PA, pro se.

## AMENDED MEMORANDUM [1]

EDUARDO C. ROBRENO, District Judge.

Presently before the court is petitioner William Michael Strube's Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (doc. no. 80) ("Petition"). For the reasons set forth below, the petition will be denied and the case dismissed.

### I. *Factual Background*

On or about August 19, 1996, United States Magistrate Judge Arnold Rappaport authorized the issuance of a search warrant authorizing a search of William Michael Strube's (hereafter "Strube" or "petitioner") residence at 4578 Klinesville Road, Columbia, PA. The request for the search warrant was supported by an affidavit of probable cause sworn by DEA Special Agent Scott Dimmick and FBI Special Agent Dan Harrelson. The affidavit described several years of historical information, and also contained recent information obtained from an active confidential informant, George Morales, who was present at the Strube's residence shortly before the warrant application was presented to the magistrate judge.

---

1. This amended memorandum substitutes for and is identical in every respect to the memorandum issued by the court on May 31, 2002 except that lines 1 and 2 of page 2 were inadvertently deleted from the original memorandum during the transcription.

On August 20, 1996, the government agents executed the warrant.[2] According to the government, the search of the residence disclosed several firearms in the master bedroom. Early on the morning of August 21, 1996, Agent Harrelson obtained from U.S. Magistrate Judge Rappaport a second warrant, authorizing the seizure of these firearms. This second warrant was challenged separately by defense counsel in the underlying proceedings in this court before the Honorable Chief Judge Edward Cahn, but is challenged in the instant petition for habeas corpus relief only to the extent that if the court finds the first warrant invalid, the second warrant, which was based on the evidence plainly viewed during the first search, is invalid as well.

In or about November, 1997, Strube and his then wife, Star Nada Strube (hereafter "Star Strube"),[3] were indicted in this court for possession of firearms by a convicted felon (Strube) and aiding and abetting the possession of firearms by a convicted felon (Star Strube). Strube hired the Miami law firm of Robbins, Tunkey, Ross, Amsel, Raben & Waxman, and specifically William Tunkey and Benjamin Waxman, to represent him in the Philadelphia proceedings.[4] Defense counsel filed motions to suppress the two search warrants obtained by the government in August, 1996, and specifically moved for a *Franks* hearing. Defense counsel also filed several motions to dismiss the indictment on various grounds, and several motions for additional discovery.

Trial was scheduled for May 18, 1998, before Judge Cahn. The jury was chosen on the first day of trial. After several hours of argument on the pending defense motions, outside the presence of the jury, Judge Cahn ruled that the petitioner was

---

2. An investigation in Harrisburg, Pennsylvania continued until April 1997, when an indictment was returned against Michael Strube and Richard Pitt, for conspiracy to possess with the intent to distribute 486 kilograms of cocaine (the "Harrisburg proceedings"). Strube and Pitt went to trial in the Harrisburg proceedings in August, 1997 and both were convicted. Michael Strube was represented by Mark Lancaster, Esq., at that trial. A suppression hearing before Judge Sylvia Rambo prior to trial resulted in a denial of Michael Strube's motion to suppress the August 19, 1996 warrant, and various documents and receipts recovered during the August 1996 search were introduced as evidence during the Harrisburg trial. Strube was sentenced to 30 years in prison for his role in the drug conspiracy.

On appeal, Strube did not challenge the denial of his motion to suppress the August 19, 1996 warrant; rather both defendants argued that Judge Rambo erred by failing to give a jury instruction on the defense of public authority, based on their assertion at trial that they obtained, transported and sold the 486 kilograms of cocaine on behalf of the U.S. Customs Service, who they claimed to be working for at the time. The Third Circuit upheld the convictions of both Strube and

Pitt, specifically citing the testimony of Customs Agents Roger Bower and Chuck Mohle that, although they were aware of Strube and Pitt's acquisition of a large boating vessel, they never approved, either explicitly or tacitly, Strube and Pitt obtaining and transporting the cocaine.

3. This petition was originally filed on May 18, 1999 on behalf of William Michael Strube and Star Strube. However, in a letter to the court, dated December 27, 2000 and filed with the clerk's office on January 30, 2001, Star Nada Strube withdrew from Civil Action 99–3800 as well as "all or any cases which is [sic] pending involving any civil action alone or with William Michael Strube." *See* doc. no. 103 and doc. no. 104. Their marital status, while currently unknown, is not relevant to these proceedings.

Star Strube was represented in the Philadelphia proceedings by Greg Magarity, Esq. However, because she has withdrawn her petition, the conduct of her counsel is not currently in controversy.

4. This is the same firm which represented Michael Strube in his appeal of the Harrisburg proceedings.

not entitled to a *Franks* hearing, the affidavit contained sufficient probable cause to search petitioner's residence, the firearms need not be suppressed, and the government had provided all discovery which was required under Federal Rule of Criminal Procedure 16, *Brady, Giglio,* and *Jencks. See* Supp. Hrg. Trans., 5/18/98, pp. 139–223 (doc. no. 76); Order, dated 5/19/98 (denying defense motions) (doc. no. 51).

The following day, after several hours of negotiations over a plea agreement between the petitioner and the government and additional time for defense counsel to go over the terms of the agreement with the petitioner, Strube pled guilty to Counts I, II, and III of the Superceding Indictment. During the plea colloquy, petitioner admitted that he understood the terms of the plea agreement, and stated that he was pleading guilty with full knowledge of the rights he was waiving and because he was guilty of the crimes with which he had been charged. The court accepted his guilty plea and dismissed the jury.

Petitioner makes the following arguments in support of his application for habeas corpus relief. First, he was deprived effective assistance of counsel because his defense counsel (1) failed to effectively argue that the government did not meet its obligations to comply with Federal Rule of Criminal Procedure 41 and the Fourth Amendment to the United States Constitution, (2) failed to obtain a *Franks* hearing, and (3) failed to argue unconstitutional selective prosecution of petitioner. Second, petitioner maintains that he was prejudiced by three violations by the government of its disclosure requirements under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

For the following reasons, the court finds that the petitioner's arguments are without merit and his petition will be denied in its entirety.

## II. *Ineffective Assistance of Counsel*

### A. *Standard*

A defendant's claim that his Fourth Amendment right against unreasonable searches and seizures was violated is not cognizable on collateral review if a defendant had a full and fair opportunity to litigate the claim. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). However, a claim of ineffective assistance of counsel may be raised on collateral review, even when the claimed ineffectiveness relates to a Fourth Amendment issue, if the claim would otherwise be barred. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test that a petitioner must satisfy to sustain a claim of ineffective counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052. To meet the second criterion, the petitioner must show that there is "[a] reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." *Id.* at

694, 104 S.Ct. 2052.[5] "There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance'; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 381, 106 S.Ct. 2574 (citing *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052).

A petitioner claiming that he was denied effective assistance of counsel with regard to a Fourth Amendment claim must prove far more than the mere existence of a meritorious Fourth Amendment claim. The Supreme Court has explained that *Strickland*'s standard:

> differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and be entitled to retrial without the challenged evidence.

*Kimmelman*, 477 U.S. at 382, 106 S.Ct. 2574.

B. *Was defense counsel's performance deficient under Strickland ?*

After a review of the record in this case, it is clear that the efforts of petitioner's counsel in the proceedings before Judge Cahn were well within the boundaries of effective representation as delineated by the Supreme Court.

1. *Motion to Suppress*

■ Defense counsel filed an extensive motion to suppress the two August 1996 search warrants supported by a memorandum of law. In these filings, defense counsel specifically describes the alleged infirmities of each section of the probable cause affidavit and argues that if the infirmities were redacted from the text, the content of the affidavit would not support a finding of probable cause. Furthermore, defense counsel detailed a long and complicated plot alleged by petitioner involving reckless and/or knowingly false representations made by the government to Magistrate Judge Rappaport in order to secure the August 19, 1996 warrant. Although Judge Cahn did not hold a *Franks* hearing, per se, he took testimony from two law enforcement officers involved with the case and heard oral argument on these issues. During argument, defense counsel specifically contended that the warrant was invalid because the evidence showed that the averments in the affidavit of probable cause were recklessly and knowingly false and based on the government's entrapment of the petitioner. Judge Cahn denied the motion.

In the instant petition for federal habeas relief, petitioner asserts the very same arguments raised by defense counsel in the suppression motion: namely the bad faith shown by the agents. Petitioner maintains that counsel was ineffective by only pointing out instances of mistakes in the facts contained in the affidavit and argues that counsel's presentation completely failed to

---

5. In the context of this motion petition where petitioner is seeking collateral relief, the burden on the petitioner is particularly heavy because petitioner seeks to challenge a guilty plea. *See United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) ("the concern with finality served by the limitation on collateral attack ... has special force with respect to convictions based on guilty pleas.").

show the calculated nature of the agents' misrepresentations. The court disagrees. To the contrary, based on a detailed reading of the motion to suppress and a transcript of the suppression hearing, it is clear that defense counsel asserted before Judge Cahn the exact same arguments which petitioner reasserts in the instant petition regarding deliberate indifference, knowing misrepresentations, and entrapment by the government. Simply because Judge Cahn was not persuaded by these arguments, it cannot be said that defense counsel was ineffective. While there are some facts asserted by petitioner in the instant petition which were not specifically cited by defense counsel in the motion to suppress,[6] the breadth and depth of defense counsel's efforts to suppress the fruits of the August 1996 search clearly shows that counsel's performance was based upon "sound strategy" and falls within the "wide range of professional assistance," *Strickland,* 466 U.S. at 688–689,

104 S.Ct. 2052, and did not infringe upon petitioner's Sixth Amendment rights.

### 2. *Franks Hearing*

■ In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that an affidavit of probable cause in support of a request for a search warrant allegedly valid on its face may be challenged by the accused if it can be shown that 1) the affidavit contains intentionally or recklessly false statements, and 2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Id.* at 171–72, 98 S.Ct. 2674. A defendant is entitled to a hearing only after he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavits, and . . . the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56, 98 S.Ct. 2674. More specifically,

---

**6.** For example, as to informant T–4, the affidavit states that T–4 provided details of petitioner's efforts from November 1997 until June 1980 to help organize the establishment of a laboratory in Tennessee to manufacture methamphetamine. In the suppression motion, defense counsel argued that the affiants deliberately omitted the fact that the United States Attorney's Office in Tennessee declined to seek an indictment against Strube in the case because the case lacked "jury appeal." Motion to Suppress, at 23–24. In the instant petition, petitioner provides additional details as to why T–4's information is untrustworthy and why the case against petitioner never came to fruition. Petition, at 29–31. Additionally, regarding informant T–5, the instant petition includes the fact, which was absent from the suppression motion, that a grand jury in the Eastern District of Pennsylvania did not return an indictment based on the same information provided by T–5. *Id.* at 31. Furthermore, regarding T–7 George Morales, the informant who provided the most recent information, the instant petition adds additional information regarding the distant asso-

ciation petitioner had with Morales and the failure of the Lancaster County Drug Enforcement Task Force to "buy or sell a single grain from Strube" based on T–7's uncorroborated information. *Id.* at 34–37. The motion also does not contain the fact that petitioner believes T–7 to be the same individual as T–10, although he does not provide any corroborating support for this assertion. As to T–8, petitioner provides somewhat more elaborate details in support of the general assertions made by defense counsel in the motion to dismiss. *Id.* at 40–41. As to T–12, petitioner adds assertions that the affidavit misled the magistrate judge to believe that T–12 had purchased quantities of drugs from petitioner, when in actuality it was petitioner's brother, by identifying him as "Mr. Strube." *Id.* at 47.

However, the court finds that the inclusion of these facts in the motion to suppress before Judge Cahn would not have changed Judge Cahn's decision on the motion or the outcome of this case because the petitioner's additional proffer does not invalidate the portion of the warrant affidavit Judge Cahn relied upon in denying the motion to suppress.

the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Id.* at 171, 98 S.Ct. 2674.

Petitioner argues that counsel failed to argue in the request for a *Franks* hearing that the petitioner was allegedly the victim of a government-sponsored conspiracy to entrap him in a drug crime. To the contrary, according to the petitioner, in actuality he was working as an informant for the United States Customs Service. In support of these allegations, petitioner offers the conclusory affidavits of himself and Star Strube, his then wife. Based on petitioner's palpable lack of proof of this alleged entrapment, defense counsel's decision to not argue more strongly the existence of such a conspiracy in its attempts to suppress the August 1996 warrant can not be said to be outside the bounds of sound trial strategy.

Rather, counsel attempted to obtain a *Franks* hearing based on the alleged misrepresentations and false information contained in the warrant itself, a much stronger argument for which there were

available to counsel facts upon which it could be supported. That Judge Cahn did not grant petitioner the right to a *Franks* hearing was not the result of counsel's ineffectiveness, but rather grew out of the petitioner's dearth of evidence and the credible proof offered by the government which contradicted petitioner's story.[7] Thus, it cannot be said that counsel's performance in choosing to emphasize his better argument for a *Franks* hearing, that the government's affidavit contained misrepresentations and false statements for which he had some factual support, as opposed to the "government-sponsored conspiracy" argument now asserted by the petitioner for which there was no supporting evidence, was deficient under the parameters set forth in *Strickland.*

### 3. Selective Prosecution

■ Petitioner makes an additional argument that counsel was ineffective for failing to argue to Judge Cahn that he was "preselected" as a target for investigation and that the government engaged in selective prosecution. However, the court finds that there is no basis for either claim. In light of the documentation provided during discovery in the petitioner's earlier Harrisburg proceeding [8] and the testimony of the law enforcement officers involved in the investigation, petitioner was known to law enforcement officers as a suspected narcotics dealer for many years. It appears from this historical information that the petitioner was well placed within the government's prosecutorial radar screen and that, therefore, the government was justi-

---

7. Such proof included the testimony of law enforcement officials involved in the investigation of petitioner who also worked with the confidential informants in this case, the information provided by the informants, as well as compelling arguments as to why petitioner's allegation of government misrepresentations,

deceit and entrapment are illogical and without merit. *See* Supp. Hrg. Trans., 5/18/98; Govt's Resp. to Defendants' Mot. for *Franks* hearing (Govt's Resp. to Petitioner's § 2255 Petition, Ex. 5).

8. *See* note 1.

fied in investigating petitioner for possible drug activities or other illegal conduct.

 Nor is there a basis for petitioner's claim that the government engaged in a selective prosecution in violation of petitioner's right to equal protection of the laws. A prosecutor's decision to bring charges rarely violates the Equal Protection Clause. In *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), the Supreme Court held that to demonstrate selective prosecution a defendant must show that he received disparate treatment and that his prosecution was improperly motivated. *Id.* at 602–03, 105 S.Ct. 1524. *See also United States v. Bell*, 113 F.3d 1345, 1351 n. 6 (3d Cir.1997). Disparate treatment arises if others similarly situated are not prosecuted. Petitioner has made no showing that he was treated differently from any other similarly situated individuals. Nor has the petitioner shown that the government "deliberately based [its decision to prosecute] upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte*, 470 U.S. at 608, 105 S.Ct. 1524. Thus, petitioner's argument that counsel was ineffective for failure to argue preselective investigation or selective prosecution is without merit.[9]

C. *Has the petitioner made a sufficient showing to set aside his guilty plea?*

██ Petitioner asserts that when he followed his counsel's advice to plead guilty the morning after the suppression hearing, he was not aware that the suppression motion had been denied. Put another way, the petitioner argues that because he was not aware of an important matter which, if known, would have affected the calculus of whether to plead guilty, his plea was not knowing and intelligent and that, therefore, it was not a valid waiver of his right to trial.

The hurdle for challenging a guilty plea on collateral attack is extremely high. For example, in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), defendant pled guilty to murder and later filed a habeas corpus petition based on the fact that black persons had been excluded from the grand jury that indicted him, in violation of *Strauder v. West Virginia*, 100 U.S. 303, 10 Otto 303, 25 L.Ed. 664 (1879). Neither the defendant nor his attorney had known of the *Strauder* violation at the time of the guilty plea. The Supreme Court held that a guilty plea "forecloses independent inquiry into the claim of discrimination in the selection of the grand jury." *Tollett*, 411 U.S. at 266, 93 S.Ct. 1602. *See also Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (guilty plea entered, in part, to avoid death penalty provision later declared unconstitutional; "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (guilty plea based on defendant's mistaken belief that confession was admissible cannot be challenged on collateral attack); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (upheld a guilty plea despite claims that it had been entered on the mistaken belief that a confession was admissible and to avoid unconstitutional death penalty provision).

---

9. Since the court finds that counsel's performance concerning the issues raised in the instant petition was not deficient under *Strickland*, it is not necessary to turn to the second prong of *Strickland* which asks whether the petitioner suffered any prejudice as a result of an alleged defect in counsel's performance.

Relying on its prior decisions, the Supreme Court in *Tollett* explained that:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received was not within the standards [required by the Sixth Amendment].

*Tollett*, 411 U.S. at 267, 93 S.Ct. 1602.

Here, while Judge Cahn did not specifically say on the record at the conclusion of the hearing "motion denied," a review of the transcript leaves no doubt that Judge Cahn was convinced that, even if stripped of all its infirmities, the affidavit submitted to Magistrate Judge Rappaport contained sufficient probable cause to search.[10] Specifically, Judge Cahn denied the request for the *Franks* hearing on the record and set the case for trial. Supp. Hrg. Trans., 5/18/98, at 222 ("I rule that there will be no *Franks* hearing. We'll start the trial tomorrow morning."). The following day, the petitioner pled guilty in open court. Before accepting the plea, Judge Cahn conducted a colloquy of the petitioner during which he advised the petitioner that by pleading guilty he was giving up his right to challenge the search warrants and to argue "that there was something improper in the affidavits, the search warrants or the searches." Trans., 5/19/98, at 26–27.[11]

You also will give up all the rights that your attorneys raised with me yesterday in your presence. You give up the right to challenge the search warrants .... in this case only, because I think you're reserving all of your rights under the warrants, Mr. Tunkey, in the Harrisburg case, you're reserving your right to challenge the warrants there?

MR. TUNKEY [Petitioner's counsel]: Absolutely, your Honor.

THE COURT: ... But it's important that Mr. Strube understands that by pleading guilty here, he gives up the right to argue that there was something improper in the affidavits or the searches or the warrants. And you raised a number of those points in his presence yesterday, and he's giving those arguments up by pleading guilty.

MR. TUNKEY: Yes, sir.

THE COURT: Do you understand that, Mr. Strube?

DEFENDANT W. STRUBE: I think so.

THE COURT: Okay. What's your hesitancy?

DEFENDANT W. STRUBE: Well, my question is is [sic] if they find later on that the

---

10. For example, at the hearing, defense counsel argued that any facts regarding misrepresentations between law enforcement official's evidencing the alleged entrapment should be excised from the affidavit of probable cause and that after the removal of these facts, the affidavit no longer contained probable cause to search. Judge Cahn rejected this assertion. Supp. Hrg. Trans., 5/18/98, at 205 ("You can't make [this argument], if the rest of the affidavit is sufficient. And it is."). In addition, in response to the defense's arguments regarding other inconsistencies and misrepresentations in the affidavit, Judge Cahn continually replied that such alleged inconsistencies and misrepresentations "did not taint the warrant." *See id.* at 206–08. Furthermore, the judge stated that the averment in the affidavit that an informant saw methamphetamine at defendant's residence alone "suggests the search is okay." *Id.* at 213.

11. The transcript of the plea colloquy on this issue reads as follows:

THE COURT: Both of you should understand that by pleading guilty it's the same as admitting that the Government can prove the charges against you and there won't be any trial.

Thereafter, the petitioner plead guilty to Counts I, II and III of the Superceding Indictment. *Id.* at 42–43. The court finds that the petitioner's after-the-fact assertion that he was unaware that Judge Cahn had denied his motion and that he was waiving the right to challenging the validity of the probable cause affidavits and search warrants is baseless.

On this record, the court finds that the petitioner cannot make a viable claim that his plea was not voluntary and intelligent as he was advised to plead guilty after the court had denied his pre-trial motion to suppress the guns found in petitioner's house during a lawful search. Under these circumstances, petitioner simply has no basis upon which to collaterally attack his guilty plea.

### III. *Brady Violations*

■ Petitioner further maintains that he was prejudiced by three violations by the government of its disclosure requirements under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):(1) failure to disclose the fact that two confidential sources in the August 19, 1996 search warrant affidavit, identified at T–7 and T–10, were the same individual or had a "dependent connection"; (2) failure to disclose their knowledge of the fact that petitioner was working for the United States Customs Service; and (3) failure to disclose that source T–13 in the August 19, 1996 search warrant affidavit was Michael Strube. For the purposes of petitioner's motion, "we assume for the sake of argument, but do not hold, that *Brady* may require the government to turn over exculpatory information prior to entry of a guilty plea." *United States v. Brown,* 250 F.3d 811, 816 n. 1 (3d Cir.2001) (citations omitted).

■ *Brady v. Maryland* provides that the government must provide to the defense any evidence favorable to the accused and material to guilt or punishment, and this duty extends to evidence affecting government witnesses' credibility. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to

warrant was illegal in Harrisburg, how that affect this case?

THE COURT: If you find that the warrant was illegal in Harrisburg, you can—that will be a good thing for you in Harrisburg, but it won't get you off the hook here.

Suppose I sentence you to 78 months here, you go to Harrisburg and you find out that Judge Rambo decides because of what Mr. Tunkey's uncovered that the warrant is defective, you can't come back here and say well, I was convicted improper because you have given up the right to make that argument.

MR. TUNKEY: That is what we have advised Mr. Strube, but with one small caveat and that is if it were to develop that there were later discovered evidence that had not been disclosed to the defense here, but which we had requested which resulted in that there might be the possibility of a 2255 or similar collateral attack on his conviction.

· THE COURT: That's true.

MR. TUNKEY: That's what we have advised him.

THE COURT: It would have to be something that you didn't know about yesterday.

MR. MAGARITY [Star Strube's counsel]: That's correct, your Honor.

MR. TUNKEY: Exactly what we told Mr. Strube, your Honor. And I think that's what he was referring to just now when—am I right, Mike?

DEFENDANT W. STRUBE: Yes.

*Id.* at 25–28. Fairly read, the court concludes that defendant understood that he was giving up his right to challenge the search warrants in connection with this case before Judge Cahn and that any success in challenging the search warrants in connection with another prosecution would not affect the outcome of his convictions in this case, subject to the caveat pertaining to the possibility of late discovered evidence not previously disclosed to the defense.

disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 675, 105 S.Ct. 3375. "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose...." *Bagley*, 473 U.S. at 675, 105 S.Ct. 3375. The court finds that the information which petitioner argues constituted *Brady* material simply does not fall within this category. With respect to the allegation that T–7 and T–10 are the same person, even if this was so, the mere assertion that these two individuals may have been either the same person, or the information they disclosed may have originated from the same source, is not exculpatory. In any event, even if the information were exculpatory and the government had a duty to disclose, the omission would only be relevant if the government informant became a witness at trial. Only one informant, neither T–7 or T–10, was identified as a trial witness by the government. Thus, any *Brady* violation, if one even existed, did not deprive the petitioner of a fair trial.

■ The second alleged violation is that the government failed to disclose that Customs Agent Joseph Wolf in Harrisburg, Pennsylvania knew that petitioner was working for the United States Customs Service in Texas when he transported cocaine from California to New York. However, there is no evidence that the agents working in this case had any knowledge of any work petitioner was doing for the Customs Service. In fact, in a prior prosecution of the petitioner, agents from Texas and Harrisburg testified under oath that there had been no communications among agents concerning any work carried out by petitioner on behalf of the Customs Service. Therefore, the government did not violate the dictates of *Brady* by failing to turn over something that did not exist.

■ Finally, the petitioner argues that the government failed to disclose that source T–13 in the August 19, 1996 search warrant affidavit was, in fact, the petitioner. According to the government, however, the petitioner was aware of this fact long before these proceedings made it to trial. The court agrees. It is uncontroverted that at the request of petitioner's counsel, the FBI turned over a copy of petitioner's confidential informant file to counsel during the discovery phase of this case. In fact, defense counsel relies on the fact that T–13 is the petitioner in petitioner's motion for a *Franks* hearing. Gov't Resp., Ex. 4, at 44.[12] Thus, no *Brady* violation occurred here. All *Brady* information was supplied to defense counsel and petitioner's conviction and sentence shall not be vacated on this ground.[13]

---

12. In addition, during the petitioner's plea colloquy in response to defense counsel's statement that petitioner would have the right to collaterally attack his guilty plea if it was later-discovered that exculpatory evidence was withheld from petitioner, Judge Cahn stated, among other things: "I think that it's pretty clear that what was known yesterday [at the suppression hearing] was that T–13 was misstated in the affidavit, so you know about that." Trans., 5/19/98, at 28.

13. Even if the evidence cited by petitioner qualified under *Brady*, the court still con-

cludes that there has been no violation. "Although the duty of disclosure under *Brady* is closely bound to due process guarantees, 'the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense'"; rather, the "prosecution's failure to disclose evidence rises to the level of a due process violation only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Brown*, 250 F.3d at 819 (quoting *Smith v. Holtz*, 210

*CONCLUSION*

For the reasons stated above, the court finds that the arguments put forth in petitioner's Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 are without merit. Therefore, the petition will be denied and the case will be dismissed.[14]

An appropriate order follows.

## ORDER

**AND NOW,** this 6th day of June, 2002, upon consideration of Petitioner's Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (doc. no. 80), the Government's Response to Petitioner's Petition for Relief under 28 U.S.C. § 2255 (doc. no. 98), and Petitioner's Traverse to the Government's Response to Petitioner's Petition for Relief under 28 U.S.C. § 2255 (doc. no. 100), it is hereby **ORDERED** that:

1. Petitioner's Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DENIED** and the case is **DISMISSED.**

2. It is **FURTHER ORDERED** that there is no probable cause to issue a certificate of appealability.

**AND IT IS SO ORDERED.**

F.3d 186, 196 (3d Cir.2000)). Here, given the evidence of the firearms found in petitioner's residence and the testimony of the officers who found the firearms, the court concludes that even if the evidence cited by petitioner constituted *Brady* material, the government's failure to disclose such evidence would not have changed the outcome of these proceedings.

**14.** The court finds that there is no need for an evidentiary hearing on the instant petition. Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts requires a court to order the "summary dismissal" of a § 2255 petition "[i]f it plainly appears from the face of the motion and any annexed exhibits and prior proceedings in the case that the movant is not entitled to relief."

When a motion is made under 28 U.S.C. § 2255 the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.

*Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989) (citing *Government of Virgin Islands v. Bradshaw,* 726 F.2d 115, 117 (3d Cir.1984)). Here, the court finds that it is clear from the record that the petitioner has not shown either ineffective assistance of counsel or that the government failed to disclose *Brady* material or that he is entitled to any form of relief under § 2255.